AO 106 (Rev. 04/10) Application for a Search Warrant



FILED

JUN 2 6 2019

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

# UNITED STATES DISTRICT COURT

for the

Southern District of West Virginia

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| 2007 Silver Dodge Caravan; Registration WV 955; Vin # 1D4GP24R77B263294 | ) |
| | ) |

Case No. 5:19-mj-00025

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____West Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922, 21 U.S.C. Section 841, and 26 U.S.C. 5861 | Possession of a firearm by a prohibited person, distribution of controlled substances, and possession of an unregistered firearm |

The application is based on these facts:
See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Randy Fisher, United States Park Ranger
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____06/25/2019_____

_____
*Judge's signature*

City and state: Charleston, West Virginia

Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

The Vehicle is a 2007 Silver Dodge Caravan with West Virginia registration 6WE 955, VIN#1D4GP24R77B263294. This vehicle was impounded as a result of a traffic stop that resulted in the arrest of Rodney Lee Browne on Route 41 in the unincorporated town of Terry, West Virginia. The vehicle was towed by Beverages Towing & Transport. The vehicle is located at a secured parking lot at Beverages Towing & Transport 180 Glenwood Lane, Shady Spring, Raleigh County, West Virginia.

The premises to be searched shall include the entire interior and entire exterior of the vehicle.

**ATTACHMENT B**

1.    Evidence of Drug Trafficking: Controlled substances, packaging materials, scales, cutting agents, presses, rubber bands, plastic bags, discarded wrappers, ledgers, bills of sale, owe sheets, lists of telephone numbers or other contact information, identifying information of customers and/or suppliers, documents related to the electronic transfer of money to include receipts for Western Union, MoneyGram and the like, prepaid debit cards, items associated with the use of controlled substances such as smoking devices, needles, items with suspected drug residue;

2.    Evidence of Firearms Possession and Use: Firearms, ammunition, bills of sale, firearm boxes and packaging, receipts relative to the purchase firearms, firearm parts and ammunition, photographs of firearms, holsters, slings, ammunition belts, and body armor;

3.    Evidence of Altering and Modifying the Firearm: Any saws, hacksaws, circular saws, reciprocating saws, grinders, drills, sanders and the like;

4.    Fruits of Criminal Activity: United States currency, all documents showing the purchase, ownership, or sale of any firearms, firearm parts, ammunition and the like.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF THE SEARCH OF

2007 Silver Dodge Caravan;
Registration WV 955; Vin #
1D4GP24R77B263294

**AFFIDAVIT IN SUPPORT OF**

**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Randy Fisher, being first duly sworn, do hereby depose and state as follows:

1.  I make this affidavit in support of an application for a search warrant for a vehicle located at Beverages Towing & Transport Inc. 180 Glenwood Lane, Shady Spring, Raleigh County, West Virginia and within the Southern District of West Virginia (SUBJECT Vehicle). The SUBJECT Vehicle is a 2007 Silver Dodge Caravan with West Virginia registration 6WE 955, VIN#1D4GP24R77B263294. The vehicle is registered to Misty Jones of 427 Industrial Drive, Beckley, West Virginia 25801. Based on the facts set forth herein, probable cause exists that the SUBJECT Vehicle contains evidence of possession of a firearm by a prohibited person, and evidence of unlawful possession of controlled substances, in 36 CFR 2.35 (b)(2) Unlawful possession of Controlled Substance, and that evidence of this offense is presently located in the SUBJECT Vehicle.

2.  I am a U.S. Park Ranger with the National Park Service (NPS).  As a U.S. Park Ranger, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.  I am a "federal law enforcement officer" as defined by Fed. R. Crim. P. 41(2)(C) and am thereby authorized to apply for federal search warrants.  I have worked as a Federal Law Enforcement Officer for the NPS for approximately 18 years.  I underwent 16 weeks of law enforcement training at the Federal Law Enforcement training center in Glynco, GA.  I have investigated federal criminal violations related to firearms and drug possession and distribution.

3.  During my 18 years as a Federal Law Enforcement Officer I have successfully investigated, arrested, and prosecuted numerous drug and firearm violators.  I routinely deal with various drug violations and suspects with firearms.

4.  There is probable cause to believe that Rodeny Lee Browne (hereinafter BROWNE or defendant) illegally possessed firearms and controlled substances, including methamphetamine and/or cocaine, in violation of 18 U.S.C. § 922(g), 21 U.S.C. § 841(a), and 26 U.S.C. § 5861.

2

5.  The information contained herein is based on my
    knowledge, training, experience, direct involvement in
    this investigation, and upon information relayed to me by
    other law enforcement agents.   Because this Affidavit
    is being submitted for the limited purpose of seeking a
    search warrant for the above-named vehicle, I have not
    set forth each and every fact learned during the course
    of this investigation, but simply those facts which I
    believe are necessary to establish probable cause.

## **PROBABLE CAUSE**

6.  On June 14, 2019, Officer Jamie Hurd and myself were
    patrolling Route 41 within the boundary of New River Gorge
    National River.   At approximately 1929 hours, we
    conducted a traffic stop on a Silver Dodge Caravan for
    violation of 36 CFR 4.2(b), to wit: WV 17A-9-2(a): Expired
    Registration. 36 CFR 4.2(b) gives the National Park
    Service the authority to adopt West Virginia state law.

7.  During the traffic stop Officer Hurd made a passenger
    side approach on the vehicle. At that time, Officer Hurd
    observed in plain view an open container of alcohol
    located in the center console cup holder, which is in
    violation of 36 CFR 4.14. Officer Hurd also observed a

3

large survival knife located beside the driver, later identified as Rodney L. Browne (hereinafter BROWNE), stuck between the driver's seat and the console. This was within the reach of BROWNE. In the front passenger seat was a female, later identified as Jessica D. Mullins (hereinafter MULLINS).

8. I made a driver's side approach on the Dodge van, gathered BROWN's information, and returned to the patrol vehicle. At that time, Officer Hurd advised me of the large knife beside BROWNE and also the open container of alcohol in the console cup holder. I had BROWNE exit the vehicle to separate him from the knife and the open container. I instructed Officer Hurd to conduct a pat down of BROWNE for additional weapons at that time.

9. BROWNE'S sweat pants were sitting below his waist line approximately at mid-thigh. BROWNE was also wearing black shorts with pockets underneath the sweatpants. During the pat down, Officer Hurd observed a clear plastic bag containing a white powder hanging out of BROWNE's right side pocket of his shorts. This substance later field-tested positive for being methamphetamine. Based on Officer Hurd's training and experience, he knew this white powdery substance was a controlled substance. I

4

later learned through BRONWE'S criminal history that he has a felony conviction from New York for Criminal Sale of Narcotics.

10. Officer Hurd conducted a probable cause search on the van due to the open container observed on his initial approach. When Officer Hurd opened the driver's door of the Dodge Caravan to retrieve the alcoholic beverage, he observed a small, clear, plastic bag containing a small amount of white powder. The bag was located in the driver's side door along with a large, clear, plastic bag. Inside the larger bag, there were small plastic baggies as well as a piece of aluminum foil with cut straws protruding from the top. Officer Hurd is aware, based on his training and experience, that straws like these and aluminum foil are commonly used to consume controlled substances. Officer Hurd is also aware that these type of plastic bags found inside the larger plastic bag are known to contain controlled substances. The aluminum foil also contained a white powdery residue, suspected to be cocaine.

11. Due to these concerns regarding the controlled substances, Officer Hurd asked BROWNE and MULLINS if any of these drugs contained fentanyl or if there was anything

5

else inside of the vehicle that contained fentanyl. MULLINS stated that there was not. BROWNE informed Officer Hurd that there shouldn't be any more drugs in the vehicle, and that he didn't do drugs that contained fentanyl. He stated that he only smoked marijuana and used cocaine. BROWNE also informed Officer Hurd that he would find a shotgun he was restoring located in the back seat of the van. No further questions were asked at that time.[1]

12. BROWNE was placed under arrest and escorted back to the police vehicle. At that time, I conducted a search on BROWNE on the passenger side of my police vehicle. I placed BROWNE in the backseat on the passenger side of my vehicle. Officer Hurd walked around the passenger side of the vehicle where I had conducted my search to speak with MULLINS again. At that time, Officer Hurd noticed a tied, clear, plastic baggie containing a white powdery substance (later field tested positive for Methamphetamine) laying on the ground where I had just conducted my search.

---

[1] It should be noted that after the defendant was in custody, and absent *Miranda* warnings, the defendant was shown the firearm that had been retrieved to verify that this was the firearm to which he was referring. He stated that it was.

13. Officer Hurd retrieved the firearm in the vehicle, a Harrington & Richardson 12-gauge shotgun, with serial number AY599519.   The shotgun was located under some blankets on the floor behind the driver's seat.   The shotgun barrel appeared to be sawed-off and grinded down with a grinder. The buttstock of the shotgun had been removed and replaced with a crudely modified piece of wood in the shape of a pistol grip. During the Investigation, Browne's criminal history was checked. The criminal history showed BROWNE to be a convicted felon for the criminal sale of a controlled substance.

14. Based upon my experience and training, consultation with other law enforcement officers experienced in drug investigations, and all facts and opinions set forth in this affidavit, I know that: in connection with the transportation of drugs, vehicles utilized by drug traffickers and users often contain articles of personal property evidencing the identify of person(s) occupying, possessing, owning, using, or controlling the vehicle.

15. Individuals involved in narcotics trafficking often maintain weapons, firearms and ammunition on their person or in their residence and/or vehicles.   Such weapons and firearms are used, and can be used, as an instrumentality

7

of the crime of possession and/or distribution of drugs and firearms. Furthermore, I am aware of instances in which traffickers have maintained such items in their residences and vehicles in order to protect themselves and guard their drugs, firearms and profits, as well as for enforcement purposes during their narcotics and firearms dealings. Firearms and ammunition have been recovered in a large majority of searches in the drug investigations in which I have been involved.

16. Individuals involved in narcotics possession and trafficking frequently communicate with co-conspirators by means of cellular telephones and electronic paging devices and usually maintain these items on their person and/or in their residence and vehicles.

17. The investigation into the defendant revealed a history of drug trafficking involvement. Due to the presence of narcotics on his person, in the vehicle, and otherwise present at the scene, I believe that the defendant has been engaged in narcotics distribution and use for a long period of time. Furthermore, based on the presence of an illegal firearm, I believe that additional evidence, such as ammunition, may also be present inside the vehicle.

18. Further, I know that drug traffickers and users

frequently know others involved in the trafficking of illegal substances. Drug traffickers will frequently use and maintain address and/or telephone books, electronic organizers, telephone paging devices and papers, records or electronic data reflecting names, addresses, telephone numbers, pager numbers of co-conspirators, sources of drug supply and drug customers, and other items which provide evidence of the identities of others involved in such trafficking. I know that they also utilize ledgers, owe sheets, bills of sale, documents related to the electronic transfer of money, and other such documentation in relation to the sale and distribution of controlled substances.

19. I also know that drug traffickers and users frequently use aliases to conceal their identities. Persons who traffic in drugs often maintain in their possession unsold or undistributed supplies of controlled substances and other drugs, drug paraphernalia including chemical diluents, weighing scales, mixing bowls, flat waxed paper bags, and metal spoons. These items are often kept in homes or vehicles from which they conduct their drug trafficking activities.

20. I also know based on my training and experience that in

order to alter the barrel of a shotgun, a variety of tools are typically required.   These include, but are not limited to, the following: hacksaws, circular saws, reciprocating saws, and grinders.

## CONCLUSION

21. Based on the above-stated information, probable cause exists that defendant and possibly others are committing violations of 18 U.S.C. 922(g), 26 U.S.C. 5845, 5861, and 36 CFR 2.35 (b)(2)and that evidence of this offense is currently located in SUBJECT Vehicle .


Further your Affiant sayeth naught.

Respectfully submitted,


Randy Fisher
U.S. Park Ranger
National Park Service


Sworn to me and subscribed in my presence this 25 day of June, 2019.

DWANE L. TINSLEY
United States Magistrate Judge

10